Marc Zemel, WSBA #44325
Alyssa Koepfgen, WSBA #46773
SMITH & LOWNEY, PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| PUGET SOUNDKEEPER ALLIANCE, | ) | |
| | ) | |
| Plaintiff, | ) | COMPLAINT |
| v. | ) | |
| | ) | |
| PORT OF EVERETT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I.  INTRODUCTION

1.      This action is a citizen suit brought under Section 505 of the Clean Water Act

("CWA") as amended, 33 U.S.C. § 1365.  Plaintiff Puget Soundkeeper Alliance

("Soundkeeper"), seeks a declaratory judgment, injunctive relief, the imposition of civil

penalties, and the award of costs, including attorneys' and expert witness fees, for Defendant

Port of Everett's (the "Port's") repeated and ongoing violations of "effluent standards and

limitations" under 33 U.S.C. §1365, Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a)

and 1342, and the terms and conditions of the National Pollutant Discharge Elimination System

COMPLAINT - 1

("NPDES") permit authorizing discharges of pollutants from the Port's facility to navigable waters.

## II.  JURISDICTION AND VENUE

2.     The Court has subject matter jurisdiction under Section 505(a) of the CWA, 33 U.S.C. § 1365(a).  The relief requested herein is authorized by 33 U.S.C. §§ 1319(d) and 1365(a).

3.     In accordance with Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), Soundkeeper notified the Port of the Port's violations of the CWA and of Soundkeeper's intent to sue under the CWA by letter dated March 28, 2022 and postmarked March 29, 2022 ("Notice Letter").  A copy of the Notice Letter is attached to this complaint as Exhibit 1.  The allegations in the Notice Letter are incorporated herein by this reference.  In accordance with 33 U.S.C. § 1365(b)(1)(A) and 40 C.F.R. § 135.2(a)(1), Soundkeeper provided copies of the Notice Letter to the Port Commissioners, the Port's Executive Director, the Administrator of the United States Environmental Protection Agency ("USEPA"), the Administrator of USEPA Region 10, and the Director of the Washington Department of Ecology ("WDOE") by mailing copies to these individuals on March 29, 2022.

4.     At the time of the filing of this Complaint, more than sixty (60) days have passed since the Notice Letter and copies thereof were issued in the manner described in the preceding paragraph.

5.     The violations complained of in the Notice Letter are continuing or are reasonably likely to re-occur.  The Port is in violation of its NPDES permit and the CWA.

6.     At the time of the filing of this Complaint, neither the USEPA nor the WDOE has commenced any action constituting diligent prosecution to redress these violations.

COMPLAINT - 2

7.      The source of the violations complained of is located in Snohomish County, Washington, within the Western District of Washington, and venue is therefore appropriate in the Western District of Washington under Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1).

### III.    PARTIES

8.      Plaintiff, Soundkeeper, is suing on behalf of itself and its member(s). Soundkeeper is a non-profit corporation organized under the laws of the State of Washington. Soundkeeper is a membership organization and has at least one member who is injured by the Port's violations.  Soundkeeper is dedicated to protecting and preserving the Puget Sound by tracking down and stopping the discharge of toxic pollutants into its waters.

9.      Plaintiff has representational standing to bring this action.  Soundkeeper's members are reasonably concerned about the effects of discharges of pollutants, including stormwater from the Port's facility, on aquatic species and wildlife that Soundkeeper's members observe, study, and enjoy.  Soundkeeper's members are further concerned about the effects of discharges from the Port's facility on human health.  In addition, discharges from the Port's facility lessen Soundkeeper's members' aesthetic enjoyment of nearby areas.  Soundkeeper has members who live, work, fish, and recreate around Possession Sound and/or the Puget Sound and are affected by the Port's discharges.  Soundkeeper members' concerns about the effects of the Port's discharges are aggravated by the Port's failure to record and timely report information about its discharges and pollution controls.  The recreational, scientific, economic, aesthetic and/or health interest of Soundkeeper and its members have been, are being, and will be adversely affected by the Port's violations of the CWA.  The relief sought in this lawsuit can redress the injuries to these interests.

COMPLAINT - 3

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

10.     Soundkeeper has organizational standing to bring this action.  Soundkeeper has been actively engaged in a variety of educational and advocacy efforts to improve water quality and to address sources of water quality degradation in the waters of western Washington, including Possession Sound and/or the Puget Sound.  The Port has failed to fulfill monitoring, recordkeeping, reporting and planning requirements, among others, necessary for compliance with its NPDES permit and the CWA.  As a result, Soundkeeper is deprived of information necessary to properly serve its members by providing information and taking appropriate action to advance its mission.  Soundkeeper's efforts to educate and advocate for greater environmental protection, and to ensure the success of environmental restoration projects implemented for the benefit of its members are also precluded.  Finally, Soundkeeper and the public are deprived of information that influences members of the public to become members of Soundkeeper, thereby reducing Soundkeeper's membership numbers.  Thus, Soundkeeper's organizational interests have been adversely affected by the Port's violations.  These injuries are fairly traceable to the Port's violations and are redressable by the Court.

11.     Defendant Port of Everett is a port district organized under the state laws governing ports or port districts.

12.     The Port owns and operates a large marine cargo terminal used for ship unloading and cargo distribution located at or about 3500 Terminal Avenue, Everett, WA 98201 and contiguous and/or adjacent properties (the "facility").

## IV.     LEGAL BACKGROUND

13.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants by any person, unless in compliance with the provisions of the CWA.  Section 301(a)

COMPLAINT - 4

prohibits, <u>inter alia</u>, such discharges not authorized by, or in violation of, the terms of a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

14.     The State of Washington has established a federally approved state NPDES program administered by the WDOE.  Wash. Rev. Code § 90.48.260; Wash. Admin. Code ch. 173-220.  This program was approved by the Administrator of the USEPA pursuant to 33 U.S.C. § 1342(b).

15.     Under Section 402 of the CWA, 33 U.S.C. § 1342, Ecology has repeatedly issued Industrial Stormwater General Permits, most recently on November 20, 2019, effective January 1, 2020, and set to expire December 31, 2024 (the "2020 Permit"). The previous iteration of the permit was issued December 3, 2014, became effective January 2, 2015, and expired December 31, 2019 (the "2015 Permit"). The 2015 Permit and 2020 Permit (collectively, "the Permits"), contain substantially similar requirements and authorize those that obtain coverage thereunder to discharge stormwater associated with industrial activity, a pollutant under the CWA, and other pollutants contained in the stormwater to waters of the United States subject to certain terms and conditions.

16.     The Permits impose certain terms and conditions on those covered thereby, including monitoring and sampling of discharges, reporting and recordkeeping requirements, as well as restrictions on the quality of stormwater discharges.  To reduce and eliminate pollutant concentrations in stormwater discharges, the Permits require, among other things, that permittees develop and implement best management practices ("BMPs") and a Stormwater Pollution Prevention Plan ("SWPPP"), and apply all known and reasonable methods of prevention, control, and treatment ("AKART") to discharges.  The specific terms and conditions of the Permits are described in detail in the Notice Letter.  *See* <u>Exhibit 1</u>.

COMPLAINT - 5

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

## V.    FACTS

17.    The Port filed applications with the WDOE for coverage under the Permits. WDOE granted the Port coverage under the 2015 permit, effective January 1, 2010, under Permit Number WAR001207.  WDOE granted the Port coverage under the 2020 Permit under the same permit number.

18.    The Port's facility discharges stormwater associated with industrial activity to the East Waterway, part of Possession Sound.

19.    The Port's facility is engaged in industrial activity and is approximately 95 acres, which are primarily paved.  The Port's facility has miles of stormwater collection pipes and has at least four reported outfalls as well as numerous unreported outfalls from the facility's wharf that discharge stormwater and other pollutants to the East Waterway.

20.    The Port has violated and continues to violate "effluent standards or limitations," as defined by 33 U.S.C. §1365(f), including conditions of the NPDES permit found at Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342.  The Port's violations of the Permits and the CWA are set forth in sections I through VIII of the Notice Letter attached hereto as Exhibit 1 and are incorporated herein by this reference.  In particular and among the other violations described in the Notice Letter, the Port has violated the Permits by contributing to violations of water and sediment quality standards, failing to implement AKART, failing to monitor discharges, failing to implement BMPs to control stormwater quality, failing to timely complete adaptive management responses required by the Permits, failing to timely submit complete and accurate reports, and failing to report permit violations.

21.    The Port has discharged stormwater containing levels of pollutants that exceed the benchmark values established by the Permits, including on the days on which the Port collected

COMPLAINT - 6

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

samples with the results identified in Table 1 below, and is likely to continue discharging

comparably unacceptable stormwater effluent:

**Table 1 – Benchmark Exceedances**

| Quarter in which sample was collected (monitoring location) | Turbidity (Benchmark 25 NTU) | Copper (Benchmark 14 µg/L) | Zinc (Benchmark 117 µg/L) | pH (>5.0, <9.0 standard units) |
|---|---|---|---|---|
| 2Q 2018 (STSO*) | | | 180 | |
| 4Q 2018 (4*) | 76 | | | |
| 4Q 2018 (2*) | 29 | | | |
| 1Q 2019 (2) | 62 | | | |
| 1Q 2019 (STSO) | 43 | | | |
| 3Q 2019 (3*) | | 26 | | |
| 4Q 2019 (3) | | | | 9.08 |
| 1Q 2020 (3) | | | 300 | |
| 1Q 2020 (105*) | | 41.6 | 216 | |
| 1Q 2020 (103*) | 44.5 | 34 | | |
| 2Q 2020 (3) | | | | 9.29 |
| 2Q 2020 (105) | | 101.933 | 263 | |
| 3Q 2020 (103) | 49.0667 | 136.033 | 46.867 | |
| 3Q 2020 (3) | | 70.333 | | 10.9 |
| 3Q 2020 (4) | 107 | 196 | | |
| 3Q 2020 (STSO) | 25.7667 | | | |
| 4Q 2020 (3) | | 23.2333 | | |
| 1Q 2021 (3) | | 44 | | |
| 1Q 2021 (4) | | 45 | | |
| 2Q 2021 (3) | | 56 | | |
| 2Q 2021 (4) | 35.5 | 47.5 | | |
| 3Q 2021 (3) | | 120 | 620 | |
| 3Q 2021 (4) | | 66.5 | | |
| 4Q 2021 (3) | | 19 | 120 | |
| 4Q 2021 (4) | 27.25 | 36 | | |
| 1Q 2022 (4) | 78 | 39 | 240 | |
| 1Q 2022 (2) | 72 | | | |
| 1Q 2022 (STSO) | 63.5 | | | |

*Key- 3, 4, 2, STSO, 105, and 103 are monitoring point designations used and known by the

Port.

COMPLAINT - 7

22.     The Port discharges stormwater from the facility containing levels of pollutants that exceed the effluent limitations established by the Permits, including days on which the Port collected samples with the results identified in Table 2, and is likely to continue discharging comparably unacceptable levels of pollutants in its stormwater. Each and every one of these discharges is a separate violation of the Permits and occurred on dates within the identified calendar quarters known to the Port:

**Table 2 – Numeric Effluent Limit Violations**

| Calendar quarter of violation | Daily Maximum TSS concentration in mg/L (30 mg/L limit) (monitoring point) |
|---|---|
| 4th Quarter 2018 | 36 (Monitoring Point #4) |
| 1st Quarter 2019 | 32 (Monitoring Point #2) |
| 2nd Quarter 2020 | 46 (Monitoring Point #105), 39 (Monitoring Point #103) |
| 4th Quarter 2020 | 68 (Monitoring Point #3) |
| 3rd Quarter 2021 | 36 (Monitoring Point #3) |

23.     The stormwater samples identified in Tables 1 and 2 are representative of and accurately characterize the quality of stormwater discharges generated by the Port's facility during the associate calendar quarter. The stormwater monitoring data provided in Tables 1 and 2 show benchmark and effluent limit exceedances reported to the WDOE.

23.     The Port's stormwater discharges are causing or contributing to violations of water quality standards and therefore violate the Permits.  Discharges from the Port's facility contribute to the polluted conditions of the waters of the State, including to the water quality standards of the East Waterway and Possession Sound.  Discharges from the Port's facility contribute to the ecological impacts that result from the pollution of these waters and to Soundkeeper and its members' injuries resulting therefrom. These requirements and the Port's violations thereof are described in detail in sections I and II of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference

COMPLAINT - 8

24.     The Port's exceedances of the benchmark values and numeric effluent limits indicate that the Port is failing to apply AKART to its discharges and/or is failing to implement an adequate SWPPP and BMPs.  The Port violated and continues to violate the Permits by not developing, modifying, and/or implementing BMPs and a SWPPP in accordance with the requirements of the Permits, and/or by not applying AKART to discharges from the facility. These requirements and the Port's violations thereof are described in detail in sections I, II, and III of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference.

25.     The Port has violated and continues to violate the monitoring requirements of the Permits.  The monitoring requirements and the Port's violations thereof are described in section IV of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference.

26.     The Port has not conducted and/or completed the corrective action responses as required by the Permits.  These requirements of the Permits and the Port's violations thereof are described in section V of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference.

27.     Condition S8.B of the Permits require a permittee to undertake a Level 1 corrective action whenever it exceeds a benchmark value identified in Condition S5. A Level 1 corrective action comprises review of the SWPPP to ensure permit compliance, revisions to the SWPPP to include additional operational source control BMPs with the goal of achieving the applicable benchmark values in future discharges, signature and certification of the revised SWPPP, summary of the Level 1 corrective action in the annual report, and full implementation of the revised SWPPP as soon as possible, but no later than the DMR due date for the quarter the

COMPLAINT - 9

benchmark was exceeded. Condition S8.A of the 2020 Permit requires that the permittee implement any Level 1 corrective action required by the 2015 Permit.

28.     The Port triggered Level 1 corrective action requirements for each benchmark exceedance identified in Table 1 above. The Port has violated and continues to violate the requirements of the Permits described above by failing to conduct a Level 1 corrective action in accordance with Permit conditions, including the required review, revision, and certification of the SWPPP, the required implementation of additional BMPs, and the required summarization in the annual report, each time since March 28, 2017, that its quarterly stormwater sampling results were greater than a benchmark, including the benchmark excursions listed in Table 1 above. These corrective action requirements and the Port's violations thereof are described in section V.A of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference.

29.     Condition S8.C of the Permits require a permittee to undertake a Level 2 corrective action whenever it exceeds a benchmark value identified in Condition S5 during any two quarters during a calendar year.  A Level 2 corrective action comprises review of the SWPPP to ensure permit compliance, revisions to the SWPPP to include additional structural source control BMPs with the goal of achieving the applicable benchmark values in future discharges, signature and certification of the revised SWPPP, summary of the Level 2 corrective action in the annual report, and full implementation of the revised SWPPP as soon as possible, but no later than August 31st of the year following the triggering of the Level 2 corrective action. Condition S8.A of the 2020 Permit requires that the permittee implement any Level 2 corrective action required by the 2015 Permit.

COMPLAINT - 10

30.     The Port triggered Level 2 corrective action requirements for each benchmark exceedance identified in Table 1 above that occurred in any two quarters of a calendar year for the same pollutant parameter. The Port has violated and continues to violate the requirements of the Permits described above by failing to conduct a Level 2 corrective action in accordance with Permit conditions, including the required review, revision, and certification of the SWPPP, the required implementation of additional structural source control BMPs, and the required summarization in the annual report, each time since March 28, 2017, that its quarterly stormwater sampling results were greater than a benchmark, for any two quarters during a calendar year, including the benchmark excursions listed in Table 1 above.  These violations include, but are not limited to, the Port's failure to fulfill these obligations for zinc, copper, pH, turbidity, and TSS triggered by its stormwater sampling during calendar year 2020; and copper, zinc, and turbidity triggered by its stormwater sampling during calendar year 2021. These corrective action requirements and the Port's violations thereof are described in section V.B of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference.

31.     Condition S8.D of the Permits require a permittee to undertake a Level 3 corrective action whenever it exceeds a benchmark value identified in Condition S5 during any three quarters during a calendar year.  A Level 3 corrective action comprises review of the SWPPP to ensure permit compliance, revisions to the SWPPP to include additional treatment BMPs and operational and/or structural source control BMPs if necessary, with the goal of achieving the applicable benchmark values in future discharges, signature and certification of the revised SWPPP, summary of the Level 3 corrective action in the annual report, and full implementation of the revised SWPPP as soon as possible, but no later than September 30th of the year following the triggering of the Level 3 corrective action.  Condition S8.D also requires

COMPLAINT - 11

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

that before implementation of any BMPs that require site-specific design or sizing of structures, equipment, or processes, that the permittee submit an engineering report, plans, and specifications, and an operations and maintenance manual to WDOE for review, which must be submitted no later than May 15th prior to the Level 3 corrective action deadline. Condition S8.A of the 2020 Permit requires that the permittee implement any Level 3 corrective action required by the 2015 Permit.

32.    The Port triggered Level 3 corrective action requirements for each benchmark exceedance identified in Table 1 above that occurred in any three quarters of a calendar year. The Port has violated and continues to violate the requirements of the Permits described above by failing to conduct a Level 3 corrective action in accordance with Permit conditions, including the required review, revision, and certification of the SWPPP, the required implementation of additional BMPs, the required submission of an engineering report and Operation and Maintenance Manual, and the required summarization in the Annual Report, each time that its quarterly stormwater sampling results were greater than a benchmark for any three quarters during a calendar year, including the benchmark excursions listed in Table 1 above. These violations include the Port's failure to perform a Level Three Corrective Action for copper, zinc, and turbidity triggered by its stormwater sampling during calendar year 2020; and copper triggered by its stormwater sampling during calendar year 2021. These corrective action requirements and the Port's violations thereof are described in section V.C of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference.

34.    Condition S9.B of the Permits requires the Port to submit an accurate and complete annual report to WDOE no later than May 15th of each year that includes specific information.  The Port has violated and continues to violate these requirements. The Port violated

COMPLAINT - 12

1
2
3
4

this condition by failing to include all of the required information in the annual reports it submitted for years 2018, 2019, and 2020.  These annual report requirements and the Port's violations thereof are described in section VII of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference.

5
6
7
8
9

35.      Upon information and belief, the Port has failed to comply with recording and record keeping requirements of the Permits.  These requirements and the Port's violations thereof are described in section VI of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference.

10
11
12
13
14
15
16
17
18

36.       Condition S9.E of the Permits requires the Port to take certain actions in the event the Port is unable to comply with any of the terms and conditions of the Permits which may endanger human health of the environment, including taking immediate action to minimize potential pollution and immediately notifying WDOE of the failure to comply, followed up with a written report to WDOE.  These requirements and the Port's violations thereof are described in section VIII of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference.

19
20
21

37.      Each of the Port's violations of the Permit and the CWA are ongoing in that they are currently continuing or are likely to reoccur at least intermittently in the future.

22
23

37.      A significant penalty should be imposed against the Port under the penalty factors set forth in 33 U.S.C. § 1319(d).

24
25
26

38.      The Port's violations were avoidable had the Port been diligent in overseeing facility operations and maintenance.

27
28

39.      The Port benefited economically as a consequence of its violations and failure to implement improvements at the facility.

29

COMPLAINT - 13

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

40.     The Port's violations caused and contributed to pollution in the water column and sediments of the receiving water, which may be ameliorated by an order from the Court requiring clean up or monitoring.

## VI.     CAUSE OF ACTION

41.     The preceding paragraphs and the allegations in sections I through VIII of the Notice Letter, attached hereto as Exhibit 1, are incorporated herein.

42.     The Port's violations of its NPDES permits described herein and in the Notice Letter constitute violations of Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342, and violations of "effluent standard(s) or limitation(s)" as defined by Section 505 of the CWA, 33 U.S.C. § 1365.

43.     The violations committed by the Port are ongoing, in that they are presently continuing or are reasonably likely to reoccur at least intermittently.  Any and all additional violations of the Permits and the CWA which occur after those described in Soundkeeper's Notice Letter but before a final decision in this action should be considered continuing violations subject to this Complaint.

44.     Without the imposition of appropriate civil penalties and the issuance of an injunction, the Port is likely to continue to violate the Permits and the CWA to the further injury of Soundkeeper, its members, and others.

45.     A copy of this Complaint will be served upon the Attorney General of the United States and the Administrator of the USEPA as required by 33 U.S.C. § 1365(c)(3).

## VII.     RELIEF REQUESTED

Wherefore, Soundkeeper respectfully requests that this Court grant the following relief:

COMPLAINT - 14

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

A.    Issue a declaratory judgment that the Port has violated and continues to be in violation of the Permits and Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342;

B.    Enjoin the Port from operating the facility in a manner that results in further violations of the Permits or the CWA;

C.    Order the Port to immediately implement a SWPPP that is in compliance with the Permits;

D.    Order the Port to allow Soundkeeper to participate in the development and implementation of the Port's SWPPP;

E.    Order the Port to provide Soundkeeper, for a period beginning on the date of the Court's Order and running for four years after the Port achieves compliance with all of the conditions of the Permits, with copies of all reports and other documents which the Port submits to the USEPA or to the WDOE regarding the Port's coverage under the Permit at the time those documents are submitted to these agencies;

F.    Order the Port to take specific actions to remediate the environmental harm caused by its violations;

G.    Grant such other preliminary and/or permanent injunctive relief as Soundkeeper may from time to time request during the pendency of this case;

H.    Order the Port to pay civil penalties of $59,973 per day of violation for each violation committed by the Port after November 2, 2015 pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a), and 40 C.F.R. § 19 and 19.4;

I.    Award Soundkeeper its litigation expenses, including reasonable attorneys' and expert witness fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d); and

J.    Award such other relief as this Court deems appropriate.

COMPLAINT - 15

RESPECTFULLY SUBMITTED this 31st day of May, 2022.

SMITH & LOWNEY, PLLC

By: *s/Alyssa Koepfgen*
    Alyssa Englebrecht, WSBA # 46773

By: *s/Marc Zemel*
    Marc Zemel, WSBA # 44325
    2317 E. John Street, Seattle, WA 98112
    Tel: (206) 860-2883; Fax: (206) 860-4187
    Email: alyssa@smithandlowney.com
    marc@smithandlowney.com

    *Attorneys for Plaintiff Puget Soundkeeper Alliance*

COMPLAINT - 16

Exhibit 1

SMITH & LOWNEY, P.L.L.C.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883, Fax (206) 860-4187

March 28, 2022

**Via Certified Mail - Return Receipt Requested**

Port of Everett Commissioners
1205 Craftsman Way #200
Everett, WA 98201

Lisa Lefeber, Executive Director
Port of Everett
1205 Craftsman Way #200
Everett, WA 98201

Re:     **NOTICE OF INTENT TO SUE UNDER THE CLEAN WATER ACT AND
REQUEST FOR COPY OF STORMWATER POLLUTION PREVENTION
PLAN**

Dear Commissioners Simpson, Stiger, and Bachman, and Director Lefeber:

We represent Puget Soundkeeper Alliance ("Soundkeeper"), 130 Nickerson St. #107, Seattle, WA 98109, (206) 297-7002.  Any response or correspondence related to this matter should be directed to us at the letterhead address.  This letter is to provide you with sixty days' notice of Soundkeeper's intent to file a citizen suit against the Port of Everett (the "Port"), under section 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, for the violations described below.  This letter is also a request for a copy of the complete and current stormwater pollution prevention plan ("SWPPP") required by the Port's National Pollution Discharge Elimination System ("NPDES") permit.

The Port was granted coverage under the Industrial Stormwater General Permit ("ISGP") issued by the Washington Department of Ecology ("Ecology"), which became effective on January 2, 2015 and expired on December 31, 2019, under NPDES No. WAR001207 (the "2015 Permit").  Ecology granted the Port coverage under the current iteration of the ISGP, which became effective on January 1, 2020, is set to expire on December 31, 2024 (the "2020 Permit"), and maintains the same permit number: WAR001207.

The Port has violated and continues to violate effluent standards and limitations under the CWA (see 33 U.S.C. § 1365(a) and (f)) including the terms and conditions of the 2015 Permit and the 2020 Permit (collectively, the "Permits") with respect to operations of, and discharges of stormwater and pollutants from, its facility located at or about 3500 Terminal Avenue, Everett, WA 98201, a.k.a. South Terminal Pier 1, a.k.a. the Hewitt Terminal (the "facility") as described herein to the East Waterway, part of Possession Sound. The facility

Notice of Intent to Sue - 1

subject to this notice includes any contiguous or adjacent properties owned or operated by the Port.

## I.   COMPLIANCE WITH APPLICABLE STANDARDS

Generally, Condition S1.A of the Permits requires that all discharges and activities authorized be consistent with the terms and conditions of the Permits.  As detailed below, the Port has violated these conditions by discharging and acting inconsistent with the conditions of the Permits.

### A.  Compliance with Water Quality Standards.

Condition S10.A of the Permits prohibits discharges that cause or contribute to violations of water quality standards.  Water quality standards are the foundation of the CWA and Washington's efforts to protect clean water.  In particular, water quality standards represent the U.S. Environmental Protection Agency ("EPA") and Ecology's determination, based on scientific studies, of the thresholds at which pollution starts to cause significant adverse effects on fish or other beneficial uses.  For each water body in Washington, Ecology designates the "beneficial uses" that must be protected through the adoption of water quality standards.

A discharger must comply with both narrative and numeric criteria water quality standards.  WAC 173-201A-010; WAC 173-201A-510 ("No waste discharge permit can be issued that causes or contributes to a violation of water quality criteria, except as provided for in this chapter.").  Narrative water quality standards provide legal mandates that supplement the numeric criteria.  Furthermore, the narrative water quality standard applies with equal force even if Ecology has established a numeric water quality standard.  Specifically, Condition S10.A of the Permits require that the Port's discharges not cause or contribute to an excursion of Washington State water quality standards.

The facility discharges to the East Waterway.  The section of the East Waterway to which the Port discharges does not meet water quality standards (including sediment quality standards) for dioxin, benzo(b)fluoranthene, benzo(k)anthracene, and chrysene and is included on the state's "303(d) list" of impaired water bodies.  The Port discharges stormwater that contains elevated levels of copper, zinc, turbidity, pH, and total suspended solids ("TSS") as indicated in Table 1, below.  These discharges cause and/or contribute to violations of water quality standards (including sediment quality standards) for turbidity, copper, zinc, and pH in the East Waterway; violations of the sediment management standards in the East Waterway; violations of the salmonid migration and rearing criteria, shellfish harvesting criteria, primary contact criteria, water supply criteria, wildlife habitat criteria, harvesting criteria, commerce and navigation criteria, boating criteria, and aesthetics criteria for the East Waterway. These violations have occurred each and every day during the last five years on which there was 0.1 inch or more of precipitation and continue to occur.  *See* Toxic Substances, WAC 173-201A-240 (including criteria for copper, zinc); WAC 173-201A-260 (including toxics and aesthetics criteria); WAC 173-201A-210; WAC 173-201A-240; WAC

173-201A-610; WAC 173-201A-612; and WAC 173-204 Part III.  Dates on which discharges occurred due to precipitation of 0.1 inch or more or otherwise are known to the Port.

**Table 1: Benchmark Exceedances**

| Quarter in which sample was collected | Turbidity (Benchmark 25 NTU) | Copper (Benchmark 14 µg/L) | Zinc (Benchmark 117 µg/L) | pH (>5.0, <9.0 standard units) |
|---|---|---|---|---|
| 2nd Quarter 2018<br>STSO* | | | 180 | |
| 4th Quarter 2018<br>3*<br>4*<br>2*<br>STSO | <br><br>76<br>29 | | | |
| 1st Quarter 2019<br>3<br>4<br>2<br>STSO | <br><br><br>62<br>43 | | | |
| 3rd Quarter 2019<br>3<br>4<br>2<br>STSO | | <br>26 | | |
| 4th Quarter 2019<br>3<br>4<br>2<br>STSO | | | | <br>9.08 |
| 1st Quarter 2020<br>3<br>4<br>105*<br>103*<br>2<br>STSO | <br><br><br><br>44.5 | <br><br><br>41.6<br>34 | <br><br>300<br><br>216 | |
| 2nd Quarter 2020<br>3<br>4<br>105<br>103<br>2<br>STSO | <br><br><br><br>49.0667 | <br><br><br>101.933<br>136.033 | <br><br><br>263<br>`46.867 | <br>9.29 |

| | | | | |
|---|---|---|---|---|
| 3rd Quarter 2020 | | | | |
| 3 | | 70.333 | | 10.9 |
| 4 | | 107 | 196 | |
| 2 | | | | |
| STSO | 25.7667 | | | |
| 4th Quarter 2020 | | | | |
| 3 | | 23.2333 | | |
| 4 | | | | |
| 2 | | | | |
| STSO | | | | |
| 1st Quarter 2021 | | | | |
| 3 | | 44 | | |
| 4 | | 45 | | |
| 2 | | | | |
| STSO | | | | |
| 2nd Quarter 2021 | | | | |
| 3 | | 56 | | |
| 4 | 35.5 | 47.5 | | |
| 2 | | | | |
| STSO | | | | |
| 3rd Quarter 2021 | | | | |
| 3 | | 120 | 620 | |
| 4 | | 66.5 | | |
| 2 | | | | |
| STSO | | | | |
| 4th Quarter 2021 | | | | |
| 3 | | 19 | 120 | |
| 4 | 27.25 | 36 | | |
| 2 | | | | |
| STSO | | | | |

*3, 4, 2, STSO, 105, and 103 are monitoring point designations used and known by the Port

B.     **Compliance with AKART Standards**.

Condition S10.C of the Permits requires the Port to apply all known and reasonable methods of prevention, control, and treatment ("AKART") to all discharges, including preparation and implementation of an adequate SWPPP and best management practices ("BMPs"). The Port has violated and continues to violate these conditions by failing to apply AKART to its discharges or to implement an adequate SWPPP and BMPs as evidenced by the elevated levels of pollutants in its discharge indicated in Table 1 and as described below in this Notice of Intent to Sue.

## II.      VIOLATIONS OF EFFLUENT LIMITATIONS FOR DISCHARGES TO IMPAIRED WATERS AND PUGET SOUND SEDIMENT CLEANUP SITES

Condition S6.C.1 of the Permits requires Permittees discharging to a "303(d)-listed" waterbody (Water Quality Category 5), either directly or indirectly through a stormwater drainage system, to comply with the applicable sampling requirements and numeric effluent limits in Table 6 of the Permits.  The "applicable sampling requirements and numeric effluent limits" means the sampling and effluent limits in Table 6 that correspond to the specific parameter(s) the receiving water is 303(d)-listed for at the time of permit coverage, or Total Suspended Solids (TSS) if the waterbody is 303(d)-listed for sediment quality at the time of permit coverage.  *See also* 2015 Permit Condition S6.C.2.b (the section of the East Waterway to which the Port discharges is also a Puget Sound Sediment Cleanup Site, subject to this condition).

The Port discharges to a segment of the East Waterway which is 303(d)-listed (Category 5) and has been so listed since at least the 2012 water quality assessment. The Port's discharges are subject to a maximum daily effluent limitation of 30 mg/L for TSS. The Port discharges stormwater that contains elevated levels of TSS in excess of the corresponding numeric effluent limitation, as indicated in the table of effluent limitation violations below.  Each and every one of these discharges is a separate violation of the Permits and occurred on dates within the identified calendar quarters known to the Port.

**Table 2 – Numeric Effluent Limitation Violations**

| Calendar quarter of violation | Daily Maximum TSS concentration in mg/L (monitoring point) |
|---|---|
| 4th Quarter 2018 | 36 (4) |
| 1st Quarter 2019 | 32 (2) |
| 2nd Quarter 2020 | 46 (105), 39 (103) |
| 4th Quarter 2020 | 68 (3) |
| 3rd Quarter 2021 | 36 (3) |

## III.     STORMWATER POLLUTION PREVENTION PLAN VIOLATIONS.

The Port is in violation of the Permits' SWPPP provisions as follows:

1. Condition S3.A of the Permits requires the Port to develop and implement a SWPPP as specified.  Condition S3.A.2 of the 2015 Permit and Condition S3.A.1 of the 2020 Permit require the SWPPP to specify BMPs necessary to provide AKART and ensure that discharges do not cause or contribute to violations of water quality standards.  The Port has violated these requirements of the Permits each and every day during the last five years and continues to violate them as it has failed to prepare and/or implement a SWPPP that includes AKART BMPs and BMPs necessary to comply with state water quality standards.

2. Condition S3.A of the Permits requires the Port to have and implement a SWPPP that is consistent with permit requirements, fully implemented as directed by permit conditions, and updated as necessary to maintain compliance with permit conditions.  The

Port has violated these requirements of the Permits each and every day during the last five years and continues to violate them because its SWPPP is not consistent with permit requirements, has not been fully implemented, and has not been updated as necessary.

3. The SWPPP fails to satisfy the requirements of Condition S3 of the Permits because it does not adequately describe BMPs. Condition S3.B.4 of the Permits requires that the SWPPP include a description of the BMPs that are necessary for the facility to eliminate or reduce the potential to contaminate stormwater. Condition S3.A of the Permits requires that the SWPPP include BMPs consistent with approved stormwater technical manuals or document how stormwater BMPs included in the SWPPP are demonstratively equivalent to the practices contained in the approved stormwater technical manuals, including the proper selection, implementation, and maintenance of all applicable and appropriate BMPs. *See Stormwater Management Manual for Western Washington,* July 2019, https://fortress.wa.gov/ecy/ezshare/wq/Permits/Flare/2019SWMMWW/Content/Resources/D ocsForDownload/2019SWMMWW.pdf. The Port's SWPPP does not comply with these requirements because it does not adequately describe BMPs, does not include BMPs consistent with approved stormwater technical manuals, and does not include BMPs that are demonstratively equivalent to such BMPs with documentation of BMP adequacy.

4. The Port's SWPPP fails to satisfy the requirements of Condition S3.B.2 of the Permits because it fails to include a facility assessment as mandated. The SWPPP fails to include an adequate facility assessment because it does not sufficiently describe the industrial activities conducted at the site, the general layout of the facility including buildings and storage of raw materials, the flow of goods and materials through the facility, regular business hours, and seasonal variations in business hours or in industrial activities as required.

5. The Port's SWPPP fails to satisfy the requirements of Condition S3.B.1 of the Permits because it does not include a site map that identifies significant features, the stormwater drainage and discharge structures, the stormwater drainage areas for each stormwater discharge point off-site, a unique identifying number for each discharge point, each sampling location with a unique identifying number, paved areas and buildings, areas of pollutant contact associated with specific industrial activities, conditionally approved non-stormwater discharges, surface water locations, areas of existing and potential soil erosion, vehicle maintenance areas, and lands and waters adjacent to the site that may be helpful in identifying discharge points or drainage routes.

6. The Port's SWPPP fails to comply with Condition S3.B.2.b of the Permits because it does not include an inventory that identifies all areas associated with industrial activities that have been or may potentially be sources of pollutants as required. The SWPPP does not identify all areas associated with loading and unloading of dry bulk materials or liquids; outdoor storage of materials or products; outdoor manufacturing and processing; onsite dust or particulate generating processes; on-site waste treatment, storage, or disposal; vehicle and equipment fueling; maintenance and/or cleaning of roofs and other surfaces exposed to air emissions from a manufacturing building or a process area; and maintenance and/or cleaning of roofs and other surfaces composed of materials that may be mobilized by stormwater as required by these conditions.

7.  The Port's SWPPP does not comply with Condition S3.B.2.c of the Permits because it does not include an adequate inventory of materials.  The SWPPP does not include an inventory that lists the types of materials handled at the site that potentially may be exposed to precipitation or runoff and could result in stormwater pollution; a short narrative for materials that describes the potential for the pollutants to be present in stormwater discharge and is updated when data becomes available to verify the presence or absence of the pollutants; a narrative description of any potential sources of pollutants from past activities; or a description of the materials and spills that were previously handled, treated, stored, or disposed of in a manner to allow ongoing exposure to stormwater as required.  The SWPPP also fails to describe the method and location of on-site storage or disposal of such materials and include a list of significant spills and significant leaks of toxic or hazardous pollutants as these permit conditions require.

8.  The Port's SWPPP does not comply with Condition S3.B.3 of the Permits because it does not identify the specific individuals by name or title who are responsible for SWPPP development, implementation, maintenance and modification.

9.  Condition S3.B.4 of the Permits also requires that permittees include in their SWPPPs and implement mandatory BMPs.  The Port is in violation of this requirement because it has failed to include in its SWPPP and implement the mandatory BMPs of the Permits.

10.  The Port's SWPPP does not comply with Condition S3.B.4.b.i of the Permits because it does not include required operational source control BMPs.  The Port fails to include operation source control BMPs in the following categories: good housekeeping (including the definition of ongoing maintenance and cleanup of areas that may contribute pollutants to stormwater discharges, and a schedule/frequency for each housekeeping task); preventive maintenance (including BMPs to inspect and maintain stormwater drainage, source controls, treatment systems, and plant equipment and systems, and the schedule/frequency for each task); spill prevention and emergency cleanup plan (including BMPs to prevent spills that can contaminate stormwater, for material handling procedures, storage requirements, cleanup equipment and procedures, and spill logs); employee training (including an overview of what is in the SWPPP, how employees make a difference in complying with the SWPPP, spill response procedures, good housekeeping, maintenance requirements, and material management practices, how training will be conducted, the frequency/schedule of training, and a log of the dates on which specific employees received training); inspections and recordkeeping (including documentation of procedures to ensure compliance with permit requirements for inspections and recordkeeping, identification of personnel who conduct inspections, provision of a tracking or follow-up procedure to ensure that a report is prepared and appropriate action taken in response to visual monitoring, definition of how the Port will comply with signature and record retention requirements, and certification of compliance with the SWPPP and Permit).

11.  The Port's SWPPP does not comply with Condition S3.B.4.b.i.7 of the Permits because it does not include measures to identify and eliminate the discharge of process

wastewater, domestic wastewater, noncontact cooling water, and other illicit discharges to stormwater sewers, or to surface waters and ground waters of the state.

12.  The Port's SWPPP does not comply with Condition S3.B.4.b.ii of the Permits because it does not include required structural source control BMPs to minimize the exposure of manufacturing, processing, and material storage areas to rain, snow, snowmelt, and runoff. The Port's SWPPP does not comply with Condition S3.B.4.b.iii of the Permits because it does not include treatment BMPs as required.

13.  The Port's SWPPP fails to comply with Condition S3.B.4.b.v of the Permits because it does not include BMPs to prevent the erosion of soils or other earthen materials and prevent off-site sedimentation and violations of water quality standards.

14.  The Port's SWPPP fails to satisfy the requirements of Condition S3.B.5 of the Permits because it fails to include a stormwater sampling plan as required.  The SWPPP does not include a sampling plan that: identifies points of discharge to surface waters, storm sewers, or discrete ground water infiltration locations; documents why each discharge point is not sampled; identifies each sampling point by its unique identifying number; identifies staff responsible for conducting stormwater sampling; specifies procedures for sampling collection and handling; specifies procedures for sending samples to the a laboratory; identifies parameters for analysis, holding times and preservatives, laboratory quantization levels, and analytical methods, and that specifies the procedure for submitting the results to Ecology.

## IV.   MONITORING AND REPORTING VIOLATIONS.

### A.   Failure to Collect Quarterly Samples.

Condition S4.B of the Permits requires the Port to collect a sample of its stormwater discharge once during every calendar quarter.  The Port violated this requirement by failing to collect stormwater samples from any monitoring point during the third quarter of 2017 and the third quarter of 2018.

### B.   Failure to Analyze Quarterly Samples.

Condition S5.A.1 and 2 of the Permits, Condition S6 of the Permits, and Table 6 of the Permits requires the Port to analyze stormwater samples collected quarterly for turbidity, pH, total copper, total zinc, oil sheen, and TSS.  The Port violated these conditions by failing to analyze stormwater samples for any parameter during the third quarter of 2017 and the third quarter of 2018.

### C.   Failure to Comply with Visual Monitoring Requirements.

Condition S7.A of the Permits requires that a monthly visual inspection be conducted at the facility by qualified personnel.  Condition S7.B of the Permits requires each inspection to include observations made at stormwater sampling locations and areas where stormwater associated with industrial activity is discharged; observations for the presence of floating

materials, visible oil sheen, discoloration, turbidity, odor, etc. in the stormwater discharges; observations for the presence of illicit discharges; a verification that the descriptions of potential pollutant sources required by the permit are accurate; a verification that the site map in the SWPPP reflects current conditions; and an assessment of all BMPs that have been implemented (noting the effectiveness of the BMPs inspected, the locations of BMPs that need maintenance, the reason maintenance is needed and a schedule for maintenance, and locations where additional or different BMPs are needed). The Port has violated and continues to violate these requirements because, during the last five years, it has failed to conduct each of the requisite visual monitoring and inspections each and every month.

Condition S7.C of the Permits requires that the Port record the results of each inspection in an inspection report or checklist that is maintained on-site and that documents the observations, verifications, and assessments required. The report/checklist must include the time and date of the inspection; the locations inspected; a statement that, in the judgment of the person conducting the inspection and the responsible corporate officer, the facility is either in compliance or out of compliance with the SWPPP and the Permits; a summary report and schedule of implementation of the remedial actions that the Port plans to take if the site inspection indicates that the facility is out of compliance; the name, title, signature and certification of the person conducting the facility inspection; and a certification and signature of the responsible corporate officer or a duly authorized representative. The Port is in violation of these requirements because, during the last five years, it has failed to prepare and maintain the requisite inspection reports or checklists and failed to make the requisite certifications and summaries.

## V.      CORRECTIVE ACTION VIOLATIONS.

### A.      Violations of the Level One Requirements.

Condition S8.B of the Permits requires the Port take specified actions, called a "Level One Corrective Action," each time quarterly stormwater sample results exceed a benchmark value or are outside the benchmark range. Condition S5.A and Table 2 of the Permits establish the following benchmarks: turbidity 25 NTU; pH 5–9 SU; total copper 14 µg/L; total zinc 117 µg/L; and no visible oil sheen.

As described by Condition S8.B of the Permits, a Level One Corrective Action requires that within 14 days of receipt of sampling results that indicate a benchmark exceedance during a given quarter or, for parameters other than pH or visible oil sheen, the end of the quarter, whichever is later, the Port: (1) conduct an inspection to investigate the cause of the exceedance; (2) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits and contains the correct BMPs from the applicable Stormwater Management Manual; (3) make appropriate revisions to the SWPPP to include additional operational source control BMPs with the goal of achieving the applicable benchmark values in future discharges; (4) summarize the Level One Corrective Action in the Annual Report required under Condition S9.B of the Permits; and (5) and sign, certify, and fully implement the revised SWPPP in accordance with Condition S3 of the Permits and the

applicable stormwater management manual as soon as possible, and no later than the DMR due date for the quarter the benchmark was exceeded.

The Port has violated the requirements of the Permits described above by failing to conduct a Level One Corrective Action in accordance with permit conditions, including the required review, revision and certification of the SWPPP, the required implementation of additional BMPs, and the required summarization in the Annual Report each time since January 1, 2017, its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range, including the benchmark exceedances listed in Table 1 above.

### B.      Violations of the Level Two Requirements.

Condition S8.C of the Permits requires the Port take specified actions, called a "Level Two Corrective Action," each time quarterly stormwater sample results exceed an applicable benchmark value or are outside the benchmark range for any two quarters during a calendar year. The Permits establish the benchmarks applicable to the Port, as described in section V.A of this Notice of Intent to Sue letter and Condition S5.A of the Permits.

Pursuant to Condition S8.C of the Permits, a Level Two Corrective Action requires the Port to: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits; (2) make appropriate revisions to the SWPPP to include additional structural source control BMPs with the goal of achieving the applicable benchmark value(s) in future discharges; (3) summarize the Level Two Corrective Action (planned or take) in the Annual Report required under Condition S9.B of the Permits; and (4) sign, certify, and implement the revised SWPPP according to Condition S3 of the Permits and the applicable stormwater management manual as soon as possible, and no later than August 31st of the following year.

The Port has violated the requirements of the Permits described above by failing to conduct Level Two Corrective Actions for discharges from its facility in accordance with Permits' conditions.  These violations include the failure to complete the required review, revision and certification of the SWPPP; the required implementation of additional BMPs, including additional structural source control BMPs; and the required summarization in the Annual Report each time since January 1, 2016, quarterly stormwater sampling results from the facility were greater than a benchmark or effluent limit or outside the benchmark range for any two quarters during a calendar year.  As indicated in Table 1 above, these violations include, but are not limited to, the Port's failure to fulfill these obligations for zinc, copper, pH, turbidity, and TSS triggered by its stormwater sampling during calendar year 2020; and copper, zinc, and turbidity triggered by its stormwater sampling during calendar year 2021.

### C.      Violations of the Level Three Requirements

Condition S8.D of the Permits requires the Port take specified actions, called a "Level Three Corrective Action," each time quarterly stormwater sample results exceed an applicable benchmark value or are outside the benchmark range for any three quarters during a calendar

year.  The Permits establish the benchmarks applicable to the Port, which are described in section V.A of this Notice of Intent to Sue.

As described by Condition S8.D of the Permits, when the Port triggers a Level Three Corrective Action, it is required to: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits; (2) make appropriate revisions to the SWPPP to include additional treatment BMPs with the goal of achieving the applicable benchmark value(s) in future discharges and additional operational and/or structural source control BMPs if necessary for proper function and maintenance of treatment BMPs, and sign and certify the revised SWPPP in accordance with Condition S3.A.6 of the Permits; and (3) summarize the Level Three Corrective Action (planned or take) in the Annual Report required under Condition S9.B of the Permits, including information on how monitoring, assessment, or evaluation information was (or will be) used to determine whether existing treatment BMPs will be modified/enhanced or it new/additional treatment BMPs will be installed.  Condition S8.D.2.b of the Permits require that a licensed professional engineer, geologist, hydrogeologist, or certified stormwater quality professional must design and stamp the portion of the SWPPP that addresses stormwater treatment structures or processes.

Condition S8.D.3 of the Permits requires that, before installing BMPs that require the site-specific design or sizing of structures, equipment, or processes to collect, convey, treat, reclaim, or dispose of industrial stormwater, the Port submit an engineering report, plans, and specifications, and an operations and maintenance manual to Ecology for review in accordance with chapter 173-204 of the Washington Administrative Code.  The engineering report must be submitted no later than the May 15th prior to the Level Three Corrective Action Deadline.  The plans and specifications and the operations and maintenance manual must be submitted to Ecology at least 30 days before construction/installation.

Condition S8.D.5 of the Permits requires the Port fully implement the revised SWPPP according to condition S3 of the Permits and the applicable stormwater management manual as soon as possible, and no later than September 30th of the following year.

The Port has violated the requirements of the Permits described above by failing to conduct a Level Three Corrective Action in accordance with the permit conditions including the required review, revision, and certification of the SWPPP, including the requirement to have a specified professional design and stamp the portion of the SWPPP pertaining to treatment, the required implementation of additional BMPs, including additional treatment BMPs, the required submission of an engineering report, plans, specifications, and an operations and maintenance plan, and the required summarization in the annual report each time since January 1, 2016, its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for any three quarters during a calendar year.  As indicated in Table 1 above, these violations include, but are not limited to, the Port's failure to fulfill these obligations for copper, zinc, and turbidity triggered by its stormwater sampling during calendar year 2020; and copper triggered by its stormwater sampling during calendar year 2021.

## VI.     VIOLATIONS OF THE RECORDKEEPING REQUIREMENTS.

### A.     Failure to Record Information.

Condition S4.B of the Permits requires the Port record and retain specified information for each stormwater sample taken, including the sample date and time, a notation describing if the Port collected the sample within the first 30 minutes of stormwater discharge event, an explanation of why the Port could not collect a sample within the first 30 minutes of a stormwater discharge event, the sample location, method of sampling and of preservation, and the individual performing the sampling. The Port is in violation of these conditions as it has not recorded each of these specified items for each sample taken during the last five years.

### B.     Failure to Retain Records.

Condition S9.C of the 2015 Permit and S9.D of the 2020 Permit require the Port to retain for a minimum of five years a copy of the current Permit, a copy of the Port's coverage letter, records of all sampling information, inspection reports including required documentation, any other documentation of compliance with permit requirements, all equipment calibration records, all BMP maintenance records, all original recordings for continuous sampling instrumentation, copies of all laboratory results, copies of all required reports, and records of all data used to complete the application for the Permit. The Port is in violation of these conditions because it has failed to retain records of such information, reports, and other documentation during the last five years.

## VII.    VIOLATIONS OF THE ANNUAL REPORT REQUIREMENTS.

Condition S9.B of the Permits requires the Port to submit an accurate and complete annual report to Ecology no later than May 15th of each year. The annual report must include corrective action documentation as required in Condition S8.B through S8.D of the Permits. If a corrective action is not yet completed at the time of submission of the annual report, the Port must describe the status of any outstanding corrective action. Specific information to be included in the annual report is identification of the conditions triggering the need for corrective action, description of the problem and identification of dates discovered, summary of any Level One, Two, or Three corrective actions completed during the previous calendar year including the dates corrective actions completed, and description of the status of any Level Two or Three corrective actions triggered during the previous calendar year including identification of the date the Port expects to complete corrective actions.

The Port has violated this condition. The annual reports the Port submitted for 2018 and 2019 do not identify any stormwater problems. The annual report the Port submitted for 2020 does not identify any stormwater problems and does not adequately describe the Level 2 and Level 3 corrective actions the Port plans to take.

## VIII.   FAILURE TO REPORT PERMIT VIOLATIONS.

Condition S9.E of the 2015 Permit and Condition S9.F of the 2020 Permit require the Port to take certain actions in the event its failure to comply with any of the terms and conditions of the Permits may endanger human health or the environment, or if the Port's discharges exceed any numeric effluent limitation in the permit.  In such circumstances, the Port must immediately take action to minimize potential pollution or otherwise stop the noncompliance and correct the problem and must immediately notify the appropriate Ecology regional office of the failure to comply.  The Port must then submit a detailed written report to Ecology, including specified details, within 5 days of the time the Port became aware of the circumstances unless Ecology requests an earlier submission.

The Port routinely violates these requirements, including each and every time it failed to comply with the corrective action requirements described in section V of this Notice of Intent to Sue, and each and every time the Port discharged stormwater with concentrations of pollutants in excess of the Permits benchmarks and/or effluent limits, as described in Table 1 and 2 above. All these violations may endanger human health or the environment.

## IX.   REQUEST FOR SWPPP.

Pursuant to Condition S9.F of the 2015 Permit and Condition S9.G of the 2020 Permit, Soundkeeper hereby requests that the Port provide a copy of, or access to, its SWPPP complete with all incorporated plans, monitoring reports, checklists, and training and inspection logs.  The copy of the SWPPP and any other communications about this request should be directed to the undersigned at the letterhead address.

Should the Port fail to provide the requested complete copy of, or access to, its SWPPP as required by Condition S9.F of the 2015 Permit and Condition S9.G of the 2020 Permit, it will be in violation of that condition, which violation shall also be subject to this Notice of Intent to Sue and any ensuing lawsuit.

## X.   CONCLUSION.

The above-described violations reflect those indicated by the information currently available to Soundkeeper.  These violations are ongoing.  Soundkeeper intends to sue for all violations, including those yet to be uncovered and those committed after the date of this Notice of Intent to Sue.

Under Section 309(d) of the CWA, 33 U.S.C. § 1319(d), each of the above-described violations subjects the violator to a penalty of up to $37,500 per day for each violation that occurred through November 2, 2015, and $59,973 per day for each violation that occurred thereafter.  In addition to civil penalties, Soundkeeper will seek injunctive relief to prevent further violations under Sections 505(a) and (d) of the CWA, 33 U.S.C. § 1365(a) and (d), and such other relief as is permitted by law.  Also, Section 505(d) of the CWA, 33 U.S.C. § 1365(d), permits prevailing parties to recover costs, including attorney's fees.

This Notice of Intent to Sue sufficiently states grounds for filing suit. At the close of the 60-day notice period or shortly thereafter, Soundkeeper intends to file a citizen suit against the Port under Section 505(a) of the Clean Water Act for violations.

During the 60-day notice period, Soundkeeper is willing to discuss effective remedies for the violations addressed in this letter and settlement terms. If you wish to pursue such discussions in the absence of litigation, we suggest that you initiate those discussions within 10 days of receiving this notice so that a meeting can be arranged and so that negotiations may be completed promptly. Soundkeeper does not intend to delay the filing of a complaint if discussions are continuing when the notice period ends.

Sincerely,

SMITH & LOWNEY, PLLC


By: _s/Alyssa Koepfgen_
Alyssa Koepfgen
Richard Smith


cc:     Michael Regan, Administrator, U.S. EPA
        Michelle Pirzadeh, Acting Region 10 Administrator, U.S. EPA
        Laura Watson, Director, Washington Department of Ecology